# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Philip G. Potter

**(b)** County of Residence of First Listed Plaintiff    New York
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Kosakoff & Cataldo LLP
175 Pinelawn Road, Suite 100
Melville,NY 11747   631-650-1200

## DEFENDANTS

Inc. Village of Ocean Beach, Village Building Dept., Village Board of Trustees, Mayor of the Village of Ocean Beach,

County of Residence of First Listed Defendant    Suffolk
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

***Does this action include a motion for temporary restraining order or order to show cause?*** Yes ☐ No ☒"

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Sect. 1983
Brief description of cause:
Violation of United States Constitutional Rights.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.    **DEMAND $** $2,500,000.00    CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE   8/29/23

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

**CERTIFICATION OF ARBITRATION ELIGIBILITY**

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, Michael Stanton , counsel for Plaintiff , do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

- ☑ monetary damages sought are in excess of $150,000, exclusive of interest and costs,
- ☐ the complaint seeks injunctive relief,
- ☐ the matter is otherwise ineligible for the following reason

### DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

### RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

# NY-E DIVISION OF BUSINESS RULE 1(c)

1.) Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County? ☐ Yes ☐ No

2.) If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County? ☐ Yes ☐ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District? ☐ Yes ☐ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County? ☐ Yes ☐ No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

### BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☑ Yes         ☐ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐ Yes  (If yes, please explain      ☑ No

I certify the accuracy of all information provided above.

**Signature:** _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
PHILIP G. POTTER,

                              Plaintiff,

            -against-                                    COMPLAINT and
                                                         JURY DEMAND

INCORPORATED VILLAGE OF OCEAN BEACH,
VILLAGE BUILDING DEPARTMENT, VILLAGE
BOARD OF TRUSTEES, MAYOR OF THE VILLAGE
OF OCEAN BEACH, VILLAGE BOARD OF ZONING
APPEALS, GERARD S. DRISCOLL, Village Building
Inspector in his Official & Individual capacities,
THEODORE MINSKI, Village Building Inspector in his
Official & Individual capacities, NICHOLAS WEISS,
Village Building Inspector in his Official & Individual
capacities, LOUIS SANTORA, Village Building
Inspector in his Official & Individual capacities,
ROBERT FUCHS, Village Prosecutor in his Official &
Individual capacities, and KENNETH GRAY, Village
Hearing Officer in his Official & Individual capacities,

                              Defendants.
------------------------------------------------------------------x

        Plaintiff PHILIP G. POTTER, by his attorneys, Kosakoff & Cataldo LLP, as and for a

Complaint against the INCORPORATED VILLAGE OF OCEAN BEACH, VILLAGE MAYOR

JAMES S. MALLOTT, THE VILLAGE BOARD OF TRUSTEES, THE VILLAGE BOARD OF

ZONING APPEALS, GERARD S. DRISCOLL, Building Inspector, Department of Building of

the Incorporated Village of Ocean Beach, THEODORE MINSKI, Building Inspector, Department

of Building of the Incorporated Village of Ocean Beach, NICHOLAS WEISS, Building Inspector,

Department of Building of the Incorporated Village of Ocean Beach, LOUIS SANTORA, Building

Inspector, Department of Building of the Incorporated Village of Ocean Beach, KENNETH

GRAY, Village Attorney & Village Hearing Officer, the Incorporated Village of Ocean Beach,

and ROBERT FUCHS, Village Prosecutor, the Incorporated Village of Ocean Beach, alleges as follows:

## Statement of the Case

1.     This case involves a thirteen-year harassment campaign undertaken by the Village of Ocean Beach, involving multiple violations of law, procedural abuses, due process infringements, and the singular targeting of a specific individual: the Plaintiff. The Village's motivation for targeting the Plaintiff is unclear, but whether it is motivated by malice or beleaguered by incompetence is beside the point, because its indefensible and illegal actions are not only self-evident, they already have been recognized and commented on by multiple courts.

2.     The background is as follows: Plaintiff purchased a seasonal home on Fire Island, in the Village of Ocean Beach, in 2009. He filed plans for the demolition of the existing home and the construction of a new one, those plans were approved, a building permit was issued, and construction began. The Village building inspector periodically attended the construction site, made observations, suggested changes that nominally deviated from the approved plans, and otherwise generally monitored the progress of construction. At the end of the project, the building inspector issued a final certificate of occupancy, which the Plaintiff required in order to secure a mortgage. All pretty standard stuff, but for what happened next, which is the basis for this action.

3.     After the building inspector approved the issuance of a final C/O in 2010, the Village for unknown reasons seems to have questioned whether doing so was appropriate. This had nothing to do with the Plaintiff or any material alterations to the property after the C/O was issued, because no such alterations were made. In fact, it remains unclear exactly what motivated the Village to question its building inspector's issuance of a final C/O.

4.      But either due to express direction from others or on his own initiative, the building inspector nevertheless wrote to the Plaintiff and stated, underlinedfalsely, that the Plaintiff had not timely submitted a final survey, and then used that false statement as pretext to claim, "[a]s of this date you no longer have a valid Certificate of Occupancy for your residence and are in further violation of NY State Codes and Ocean Beach Village Codes § 64-13 and 64-14 regarding Certificates of Occupancy[1]."

5.      The Village simultaneously made material alterations to its internal files. Someone acting on the Village's behalf handwrote an "X" on the permanent C/O in the Village's file, and also wrote "VOID as of July 15, 2011." No one from the Village ever informed the Plaintiff that the Village had voided the C/O without notice[2].

6.      Approximately one month later, a new building inspector wrote to the Plaintiff informing him that the Village had unilaterally, improperly, revoked the C/O.

7.      Plaintiff assumed there had simply been a mistake in the Village's recordkeeping. He therefore attempted to address the matter through verbal communications and telephone calls with the Village Building Department.

8.      Plaintiff was met with resistance. Beginning in 2012, the Village embarked on a harassment and prosecution campaign directed against the Plaintiff and specifically targeting him with baseless criminal prosecutions. It issued criminal summonses and informations, resulting in the issuance of a bench warrant for Plaintiff's arrest, all resulting from the demonstrably untrue predicate that the premises lacked a valid permanent C/O.

---

[1] As will be set forth in detail below, no provision of the Village Code permits the building inspector to revoke a duly issued certificate of occupancy, much less do so without notice, without a hearing, and on false and entirely pretextual grounds.

[2] It is expected that discovery will reveal that the Village removed the version of the C/O with the "X" and the "VOID" notation written on it. It is unclear whether any version of the permanent C/O is part of the Village's current file.

9.       But here again, the Village's duplicity is apparent by its own conduct. Notwithstanding the fact that the Village was prosecuting the Plaintiff for the alleged absence of a valid C/O, it was simultaneously taking steps to convene a public hearing for the express purpose of revoking the C/O.

10.      The Village then commenced a totally illegitimate "revocation hearing," presided over by its own Village Attorney, who took testimony and even made arguments in support of the Village's "case" against the Plaintiff. And in the end, the Village (through its own employee, the Village Attorney), issued a report recommending revoking the permanent C/O.

11.      The matter was then referred to a public hearing, but no such hearing was convened for over a year.

12.      In the meantime, the Village had full notice that its attempt to unilaterally revoke the C/O was legally ineffective and violative of due process, when the Village Justice Court (Hon. William D. Wexler) made extensive remarks during its disposition of the initial criminal cases the Village brought against the plaintiff:

> THE COURT: So the record is clear. This matter has been on a number of times. The issue is Mr. Potter received a ticket in violation of 164-25(B) of the Village Code which charges among other things that he knowingly built in the side yard setback. The defendant built a shower stall and deck extension on the west side of 205 Cottage Walk within eight feet from the set back.
>
> **As I understand this, Mr. Potter, you were issued a C of O by the Village Building Inspector, is that correct?**
>
> THE DEFENDANT: **With the specific modifications listed on the C.O.**
>
> THE COURT: Okay. **And were those modifications adhered to?**
>
> THE DEFENDANT: **Everything I'm being ticketed for has been permitted on the C.O.** The Village and/or the Trustees is in the process of reviewing my C.O. and we're in negotiations on how to potentially address this matter. They want to revoke the C.O. and I guess it's in their power to do that; at which point – well, I think that it's a civil matter at this point.

4

THE COURT: **For the record, this matter has been on umpteen times, and I've conferenced this matter umpteen times, and Mr. Potter has been here umpteen times.** I've conferenced this matter with [Village attorney] Mr. Fuchs and [plaintiff attorney] Mr. Gajdos; and Mr. Gajdos made some very compelling arguments which I've agreed with.

> **At the time you were issued the summons, you had a C of O; therefore, I don't know how the Village could prove criminal intent. They couldn't and we've had that discussion.**

As a result, I believe that the Village could bring on a preliminary action to bring on a proceeding and grant a hearing as to whether or not that C of O was wrongfully issued. That is a whole separate issue and that would be in Article 78 land, and that has nothing to do with us.

As such, based on the motion by Mr. Gajdos and the People's response today, **I am dismissing this case**. **How long has this been on?**

THE DEFENDANT:  **I think it's been three years.**

THE COURT: **Wow.** This matter is dismissed . . . .

(emphasis added).

13.     That proceeding concluded in <u>2014</u>. The Village did not get around to convening a public hearing in relation to the sham "revocation" hearing until September of <u>2015</u>, <u>four</u> <u>years</u> after the Village materially altered its own records to unilaterally, illegally, revoke Plaintiff's permanent C/O.  When the public hearing was finally convened, three of the Village's Trustees, likely recognizing that the Village's 2011 material alteration of its own records would ultimately be made public, voted to table the C/O revocation recommendation made by the Village Attorney, over the objection of the former Mayor and Deputy Mayor.

14.     As a result, to date, <u>no formal action</u> has ever been taken in relation to the revocation of the C/O. For all intents and purposes, Plaintiff should have a valid C/O.

15.     The Village's misdeeds would be laughable if the consequences were not potentially catastrophic. In addition to its affirmative prosecutions of the Plaintiff, the Village has

also acted in more subtle ways as well. It has refused, for example, to issue routine construction permits for necessary repairs at the premises. So when Plaintiff wanted to perform repairs to a damaged balcony, the Village refused to allow it. The result was that Plaintiff's bedroom balcony was without protective railings for an extended time period, which exposed the Plaintiff, his wife, and his young children to considerable and totally unnecessary danger due to the Village's inertia.

16.     Gallingly, the Village continues to refuse to reinstate the C/O for the premises.

17.     The Village cannot legitimately dispute its legal abuses, and the utter absence of any justifiable basis to revoke the permanent C/O. This is because, in addition to the Village Justice Court's 2014 acknowledgment that the purported C/O revocation in 2011 was inappropriate and without legal effect, along with the Village Board's 2015 tabling of the Village Attorney's recommendation that the C/O be revoked, the Plaintiff has been compelled to commence additional court proceedings as well.

18.     The result of the most recent court proceeding is equally unequivocal. When the Village continued to refuse to reinstate the permanent C/O after the 2015 vote to table the revocation recommendation, the Plaintiff was compelled to commence proceedings in New York State Supreme Court, most recently under Suffolk County Index No.: 614599/2020, which resulted in the unequivocal and inescapable conclusion that the permanent C/O was not properly revoked.

19.     Following the conclusion of that most recent judicial proceeding, the Village had two options: (1) convene a public hearing on notice to revoke the C/O; or (2) finally abandon its yearslong crusade against the Plaintiff.

20.     The Village did neither. It has refused to reinstate the C/O notwithstanding due demand for the same, and it has also refused to convene a public hearing on notice in relation to

the revocation of the C/O, notwithstanding the New York State Supreme Court's express directive that it do so.

21.     This action, therefore, was necessitated by the Village's decadelong inertia, which leaves the Plaintiff in legal limbo knowing he is legally entitled to the *nunc pro tunc* reinstatement of the C/O despite the Village's dogged refusal to abide judicial determinations against it.

22.     Because the Village's actions are so manifestly improper and contrary to law, and because Plaintiff has been deprived of significant Constitutional rights, the Plaintiff seeks not only compensation for the Village's abuses as required under the law, but also exemplary damages against the Village, as set forth in further detail below.

## **Nature of the Action**

23.     This is an action for declaratory judgment as well as one seeking the recovery of compensatory and punitive damages owing to the Plaintiff as a result of the acts and/or omissions of the Defendants in violation of 42 U.S.C. § 1983.  This action also asserts various violations of State law including but not limited to malicious prosecution and abuse of process.

24.     The Defendants have engaged in a series of actions which have intentionally deprived the Plaintiff of his Constitutional rights to equal protection of the law and due process of law, by willfully, deliberately, and without good faith and in an *ultra vires* manner, interfering in the Plaintiff's right to the quiet enjoyment and use of his property and the economic use and benefit of the same by purporting to revoke – and then subsequently refusing to reinstate – a validly issued Certificate of Occupancy for the Plaintiff's property. The Village did so without notice, in violation of law, and then compounded its illegal actions by denying applications for permits to rent the premises during the lucrative Fire Island summer tourist season, depriving the Plaintiff from all potential and prospective rental income from the property for a period of years which continues to

the present day, thus drastically decreasing the value of the Plaintiff's property, and rendering it non-saleable in the absence of a valid C/O.

25.     The Village's targeting has therefore placed Plaintiff in permanent limbo: he cannot reside at the premises without fear of further prosecutions, he cannot rent it, and he also cannot sell the property.

26.     In furtherance of this unlawful targeting, Defendants have (i) issued summonses, tickets, criminal informations and/or warrants without probable cause; (ii) issued stop work orders without probable cause; and (iii) without probable cause and a sufficient basis in law and without due process, criminally prosecuted the Plaintiff based upon misrepresentations of law and fact.

27.     The Plaintiff further seeks recovery for the loss of his real property, injury to his real property, the loss of the quiet use and enjoyment of property, diminution of property value, and other damages caused by the negligent acts, omissions, and failures of the defendants herein, by Constitutional deprivations and other violations of duties and obligations at law.

28.     The Defendants, and each of them, have long been on notice that their conduct as described above was unlawful, unconstitutional, and *ultra vires* and have yet failed to act to correct this injustice and, to the contrary, have "doubled down" by willfully and openly violating an Order of the Supreme Court for the State of New York, County of Suffolk, specifically holding that the Village's actions were improper and rejecting the Village's prior attempts to revoke the validly-issued Certificate of Occupancy for the Premises without notice and without due process. Notwithstanding a valid and binding Court order, the Village has failed to take any action to reinstate the improperly revoked Certificate of Occupancy, and therefore continues to violate Plaintiff's Constitutional rights.

**Jurisdiction**

29.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over the Plaintiff's

action brought pursuant to 42 U.S.C. § 1983 for the redress of the Defendants' several violations

of his Constitutional rights including the rights to equal protection of the law guaranteed to him

by the Fourteenth Amendment of the United States Constitution, procedural and substantive due

process of law guaranteed to him by the Fourteenth Amendment of the United States Constitution

and the freedom from the taking of his property without just compensation guaranteed to him by

the Fifth Amendment to the United States Constitution.

30.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over

the Defendants' deprivations and violations of related provisions of the Constitution of the State

of New York and the laws of the State of New York.

31.     The controversies presented in this action are justiciable, capable of disposition,

and the Plaintiff possesses a personal stake in the outcome of this action.

32.     The award of declaratory relief is expressly authorized here by 28 U.S.C. § 2201.

33.     The Defendants are liable to the Plaintiff for damages in excess of the jurisdictional

threshold of this Court.

**Venue**

34.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) in that all of the

parties reside in, and the property that is subject of this action, is situated within the Eastern District

of New York.

**Parties**

35.     Plaintiff is the owner of real property, a seasonal residence located at Suffolk

County Tax Map ## District 0502. Section 002.00 Block 02.00 & Lot 068.000, more commonly

referred to as 205-207 Cottage Walk, Ocean Beach, in Fire Island, Suffolk County, New York. The Plaintiff also maintains his principal place of residence and domicile in New York, New York.

36.     The Incorporated Village of Ocean Beach ("the Village") is a municipal corporation duly organized and existing under the laws of the State of New York with executive offices located at  315 Cottage Walk, P.O. Box 457, Ocean Beach, New York 11770.

37.     Under Village of Ocean Beach Administrative Code §§ 64-1 & 64-4, the Building Inspector is a public officer, and he and/or his designees are charged with all of the necessary and appropriate power and authority for the administration of the department and for the approval and issuance of Certificates of Occupancy and compliance with Village zoning or building code.

38.     Upon information and belief defendant GERARD S. DRISCOLL was the Building Inspector for the Building Department of the Incorporated Village of Ocean Beach, a public officer who administers, supervises, manages, coordinates and enforces the zoning code and applicable local laws, ordinances, rules, custom, policies, usage, rules and regulations of the Village of Ocean Beach.

39.     Upon information and belief defendant THEODORE MINSKI was the Building Inspector for the Building Department of the Incorporated Village of Ocean Beach, a public officer which administers, supervises, manages, coordinates and enforces the zoning code and applicable local laws, ordinances, rules, custom, policies, usage, rules and regulations of the Village of Ocean Beach.

40.     Upon information and belief Defendant NICHOLAS WEISS was the Building Inspector for the Building Department of the Incorporated Village of Ocean Beach, a public officer which administers, supervises, manages, coordinates and enforces the zoning code and applicable

local laws, ordinances, rules, custom, policies, usage, rules and regulations of the Village of Ocean Beach.

41.     Upon information and belief Defendant LOUIS SANTORA was the Building Inspector for the Building Department of the Incorporated Village of Ocean Beach, a public officer which administers, supervises, manages, coordinates and enforces the zoning code and applicable local laws, ordinances, rules, custom, policies, usage, rules and regulations of the Village of Ocean Beach.

42.     Upon information and belief Defendant ROBERT FUCHS was the Village Prosecutor for the Incorporated Village of Ocean Beach, a public officer who, upon further information and belief, pursuant to Village of Ocean Beach Administrative Code, prosecuted village code and zoning code violations before, in and returnable to the Ocean Beach Village Justice Court.

43.     Upon information and belief Defendant KENENTH GRAY was the Village Attorney for the Incorporated Village of Ocean Beach, a public officer, who, upon further information and belief, at all times relevant to the subject action, acted as Village Hearing Officer, for and to the Village of Ocean Beach, concerning the question of the validity and revocation of the Plaintiff's Certificates of Occupancy.

## **FACTS COMMON TO ALL CLAIMS**

44.     On or about October 21, 2009, the Plaintiff acquired title to the improved real property located at real property located at Suffolk County Tax Map ## District 0502. Section 002.00 Block 02.00 & Lot 068.000, more commonly referred to as 205-207 Cottage Walk, Ocean Beach, in Fire Island, Suffolk County, New York.

45.     At the time the Plaintiff took title, a one-story single-family dwelling existed on the property. The Plaintiff then applied to the Village Building Department for a building permit on or about December 17, 2009 for the purpose of demolishing the preexisting single-family dwelling and constructing a new single-family, two-story wood framed dwelling.

46.     The Village Building Department issued a building permit in connection with that construction project on or about December 17, 2009.

47.     During construction of the new home, then Village Building Inspector Driscoll in an apparent spirit of accommodation and collaboration, made certain representations and assurances to the Plaintiffs' general contractor Jim Gray that the Village would work with him to ensure the new structure met or exceeded prevailing Code requirements.

48.     Plaintiff substantially completed construction of the new structure in spring or early summer of 2010.

49.     On or about July 2, 2010, the Village Building Department issued a temporary Certificate of Occupancy to the Plaintiff concerning the new construction. Subsequently, a second temporary Certificate of Occupancy would be issued. A true and accurate copy of the Temporary Certificate of Occupancy, dated July 2, 2010, is attached as Exhibit 1.

50.     On or about August 12, 2010, Building Inspector Driscoll issued correspondence to the Plaintiff notifying him that the Village required, among other things, the filing of a final survey in order to finalize the Certificate of Occupancy for the Premises.

51.     Plaintiff promptly complied with this request, and filed the final "as built" survey with the Village Building Department. While understanding that the filing of a final survey was a necessary prerequisite to the issuance of a permanent C/O, it cannot go unsaid that Building Inspector Driscoll was intimately aware of the construction at Plaintiff's property.

52.     As very brief background, Plaintiff's construction project occurred in 2009 and 2010, in the heart of the economic crisis. On information and belief, there were exactly <u>two</u> construction projects taking place in the Village at the time, one of them being the Plaintiff's. Building Inspector Driscoll was therefore in the unique position to be fully involved in Plaintiff's construction project, and he was on site multiple times per week, if not more frequently. The extent of his oversight and involvement in the project cannot go unmentioned.

53.     The final survey, therefore, depicted the property exactly as Building Inspector Driscoll last saw it, which complied with Mr. Driscoll's own significant involvement. A true and accurate copy of the final "as built" survey for the premises, dated August 8, 2010, is attached as Exhibit 2.

54.     The Village promptly issued the permanent Certificate of Occupancy after receiving the final survey, faxing it to the Plaintiff on or about October 18, 2010, with a retroactive application date to July 2, 2010, the date of the issuance of the initial Preliminary Certificate of Occupancy. A true and accurate copy of the Permanent Certificate of Occupancy, issued on or about October 18, 2010 and applied retroactively to July 2, 2010, is attached as Exhibit 3.

55.     As is relevant here, the C/O lists the following accessory structures as being covered:

-        Above ground in deck 10x20 swimming pool;

-        4'x4' "A/C" platform;

-        Wood garbage storage bin;

-        4'x7' outdoor shower stall;

-        4'x4' utility storage; and

-        Propane tank platform.

*See* Ex. 3.

56.     These items are depicted and called out on the final survey. *See* Ex. 2.

57.     It is notable that the Plaintiff made no material alterations or changes to the property following the issuance of the Permanent C/O on or about October 18, 2010 and the events that followed.

58.     On or about July 15, 2011, Building Inspector Driscoll issued correspondence to the Plaintiff purporting to state that the Plaintiff had failed to timely comply with the directive to submit a final survey in order to obtain a permanent Certificate of Occupancy. Building Inspector Driscoll falsely claimed in his correspondence that he requested a final survey from Plaintiff's general contractor, and that the final survey was provided on July 11, 2011 (*i.e.*, nine months after the Permanent Certificate of Occupancy was issued).

59.     Village Building Inspector Driscoll's correspondence incorrectly states that the final survey revealed violations of prevailing Village Code that required the removal of, among other things, the deck that had already been built, inspected, and approved at the Property.

60.     The correspondence goes on to state, "[a]s of this date you no longer have a valid Certificate of Occupancy for your residence and are in further violation of NY State Codes and Ocean Beach Village Codes § 64-13 and § 64-14 regarding Certificates of Occupancy." A true and accurate copy of the July 15, 2011 correspondence is attached as Exhibit 4.

61.     Notably, Plaintiff disputes that this correspondence was ever sent. It was only discovered through a Freedom of Information Act request, and Plaintiff has no record of receiving it. More to the point, it was well known that Plaintiff was spending the summer in the Village and yet the correspondence was inexplicably sent to the Plaintiff's New York City address and not sent

(or even delivered) to him at the premises. Upon information and belief, there is no "receipt" of the correspondence having been sent by certified mail in the Village's files.

62. At or around the same time, acting unilaterally, in excess of legal authority and in violation of the Plaintiff's rights to due process, the Village then materially altered the Permanent Certificate of Occupancy it maintained in its files.

63. It crossed through the Permanent Certificate of Occupancy with a handwritten "X" and an unknown individual employed by the Village or acting on its behalf wrote "VOID as of July 15, 2011." A true and accurate copy of the altered Permanent Certificate of Occupancy is attached as Exhibit 5.

64. The version of the C/O with the "X" and "VOID" written on it are apparently no longer a part of the Village's files. A Freedom of Information Act request made in 2012 resulted in the production of that document, whereas a more recent F.O.I.A. request did not.

65. On or about August 23, 2011, the Village issued another letter to the Plaintiff, now from Village Building Inspector Theodore Minski, which noted, among other things, that the Village had unilaterally "revoked" the permanent C/O based on purported discrepancies between the building plans for the premises and the final survey. A true and accurate copy of the Village's August 23, 2011 correspondence is attached as Exhibit 6.

66. Notably, among the "violations" noted in this correspondence are the same structures that were expressly permitted under the permanent C/O and depicted on the final survey which was filed before the permanent C/O was issued: (1) the garbage shed; (2) the "A/C" platform; (3) the storage shed; and (4) the shower stall. *Id.*; *see also* Exs. 2 and 3.

67.    And more significantly, the August 23, 2011 correspondence was nonsensical because Building Inspector Driscoll (Mr. Minski's predecessor), had been fully involved in every change that deviated from the building plans that had been filed before construction began.

68.    Assuming at this point that there had simply been a misunderstanding or an error in the Village's recordkeeping, Plaintiff attempted to rectify the situation through verbal communications and telephone calls with the Village Building Department.

69.    At no time was the Plaintiff notified that the Village had already altered its files to write an "X" through the validly-issued Certificate of Occupancy, nor was Plaintiff aware that the Village's files had been materially altered to reflect the purported revocation of the Certificate of Occupancy retroactive to July 15, 2011.

70.    Perhaps even more notably, there is no provision of the Village Code permitting the building inspector to revoke a duly-issued certificate of occupancy, much less allowing the building inspector to do so without notice.

71.    But the Village "doubled down," and weaponized its own procedural violations to commence criminal prosecutions against the Plaintiff based on the purported absence of a valid Certificate of Occupancy.

72.    Beginning in early 2012, the Village, acting through its Building Department and related inspectors and officials, issued eight separate simplified criminal informations returnable to the Ocean Beach Village Justice Court for alleged violations of village zoning and building codes against the Plaintiff.

73.    Each and every one of these criminal informations arose out of the demonstrably false and patently untrue predicate that the Plaintiff knowingly violated Village building code:

-    the *first* violation relates to the shower stall, deck extension, and stair case;

- the *second* violation relates to the temporary storage shed;

- the *third* violation relates to the "A/C" platform;

- the *fourth* violation claims that non-structural garden planters constituted a "retaining wall" that was built without a building permit;

- the *fifth* violation relates to the propane cylinders;

- the *sixth* violation pertains to the garbage bin;

- the *seventh* violation also pertains to the garbage bin; and

- the *eighth* violation pertained to the installation of swimming pool implements.

74.     In other words, nearly all these violations applied to items that were called out on the final survey, or covered under the permanent C/O, or both. Moreover, each of the alleged "violations" pertains to a condition that is so common and widespread in the neighborhood surrounding the premises that it belies credibility that the Village would actually seek legitimate enforcement.

75.     On or about April 3, 2012, the Village Defendants acting through its Village Prosecutor, issued a criminal summons against the Plaintiff returnable in the Ocean Beach Village Justice Court for these alleged violations. Here again, the Village for some reason never attempted to serve the Plaintiff at his seasonal address despite Plaintiff spending the entire 2012 summer season in Fire Island.

76.     When the informations were returnable in November 24, 2012, the Ocean Beach Village Justice Court issued a bench warrant for the arrest of the Plaintiff.

77.     The criminal violations assessed against the Plaintiff were then returnable in the Village Justice Court for the Village of Ocean Beach on no fewer than seventeen occasions, ultimately resulting in Plaintiff's former counsel (now New York State Supreme Court Justice Michael A. Gajdos), filing a dismissal motion pertaining to each charge.

17

78.     The criminal cases were predicated on the alleged <u>absence</u> of a permanent C/O for the property. But at the same time the Village was taking its first steps to formalize its wholly improper and unilateral revocation of the C/O.

79.     By letter dated June 4, 2014, the Village, acting through its Village Attorney Kenneth Gray, Esq., sent the Plaintiff notice that it was referring the matter of the validity of his Certificate of Occupancy to a public hearing originally scheduled to be held on June 11, 2014 at Village Hall. A true and accurate copy of the Notice of Hearing, dated June 4, 2014, is attached as Exhibit 8.

80.     Following adjournment and rescheduling, on June 23, 2014, the Village, acting through its Village Attorney, commenced a totally illegitimate "revocation hearing" chaired by Mr. Gray as a putative "hearing officer," notwithstanding the undeniable fact that Mr. Gray was employed by the Village itself. Despite his purported appointment as an officer overseeing the hearing, Mr. Gray frustrated the putative purpose of those sham proceedings, instead acting in a manner that was adversarial to the Plaintiff.

81.     At times during the course of proceedings, Mr. Gray examined and took testimony from witnesses to include then Village Building Inspector Louis Santora, the Plaintiff's builder Jim Gray, and the Plaintiff, and even made arguments in support of the Village's "case" against the Plaintiff.

82.     The Village conducted this sham hearing even though the Plaintiff's then counsel raised valid objections at the outset that the proceeding was not authorized by any provision of Village Code. The Village continued the sham proceeding even though the Plaintiff's then counsel objected and contended that neither the Village Mayor nor the Village Board of Trustees had

enacted any enabling legislation specifically appointing or authorizing Mr. Gray to conduct those illegitimate proceedings.

83.     The transcript of the hearing is remarkable in many ways, including Plaintiff's numerous attempts to convey the fact that the Village had been involved in, inspected, and approved each of the items it purported to base its revocation of the C/O on. A true and accurate copy of the June 23, 2014 hearing transcript is attached as Exhibit 9.

84.     The hearing officer was predictably unmoved. After all, it was the Village's own handpicked officer. So despite using this flawed proceeding and acting in such an *ultra vires* manner, Mr. Gray concluded the proceedings to report and recommend, by report dated August 14, 2014, that the Plaintiff's Certificate of Occupancy be revoked for noncompliant zoning. A true and accurate copy of Mr. Gray's August 14, 2014 Report and Recommendation is attached as Exhibit 10.

85.     When Mr. Gray issued the report and recommendation to the Village with carbon-copy to the Plaintiff, Mr. Gray indicated an understanding that the matter would be placed on the Village Board of Trustees' agenda for the August 23, 2014 scheduled meeting.

86.     In the meantime, the Village continued its prosecutions of the Plaintiff with yet another appearance in Village Justice Court. The transcript of that appearance is even more remarkable than the transcript of the sham revocation hearing, in that the Village Prosecutor conceded that he could not, "in all good faith" oppose the Plaintiff's motion to dismiss the criminal violations because "***the Village of Ocean Beach did issue a Certificate of Occupancy***" for the premises. A true and accurate copy of the transcript of the November 1, 2014 appearance in Village Justice Court is attached as Exhibit 11.

19

87.    That concession led the presiding judge to make lengthy remarks on the illegitimacy of the criminal prosecutions:

> THE COURT: So the record is clear. This matter has been on a number of times. The issue is Mr. Potter received a ticket in violation of 164-25(B) of the Village Code which charges among other things that he knowingly built in the side yard setback. The defendant built a shower stall and deck extension on the west side of 205 Cottage Walk within eight feet from the set back.
>
> As I understand this, Mr. Potter, you were issued a C of O by the Village Building Inspector, is that correct?
>
> THE DEFENDANT:  With the specific modifications listed on the C.O.
>
> THE COURT: Okay. And were those modifications adhered to?
>
> THE DEFENDANT:  Everything I'm being ticketed for has been permitted on the C.O. The Village and/or the Trustees is in the process of reviewing my C.O. and we're in negotiations on how to potentially address this matter. They want to revoke the C.O. and I guess it's in their power to do that; at which point – well, I think that it's a civil matter at this point.
>
> THE COURT: For the record, this matter has been on umpteen times, and I've conferenced this matter umpteen times, and Mr. Potter has been here umpteen times. I've conferenced this matter with [Village attorney] Mr. Fuchs and [plaintiff attorney] Mr. Gajdos; and Mr. Gajdos made some very compelling arguments which I've agreed with.
>
> **At the time you were issued the summons, you had a C of O; therefore, I don't know how the Village could prove criminal intent. They couldn't and we've had that discussion.**
>
> As a result, I believe that the Village could bring on a preliminary action to bring on a proceeding and grant a hearing as to whether or not that C of O was wrongfully issued. That is a whole separate issue and that would be in Article 78 land, and that has nothing to do with us.
>
> As such, based on the motion by Mr. Gajdos and the People's response today, **I am dismissing this case**. **How long has this been on?**
>
> THE DEFENDANT:  **I think it's been three years.**
>
> THE COURT: **Wow.** This matter is dismissed . . . .
>
> *See* Ex. 11 (emphasis added).

88.     With the criminal violations dismissed on, among other things, the undeniable fact that the Village issued a permanent C/O that (should have) remained valid and of full effect, the Village Board of Trustees met and held a public meeting on or about September 12, 2015 for purposes of deciding whether to adopt Mr. Gray's Report and Recommendation supporting the revocation of the C/O.  Among the items discussed publicly and appearing on their agenda, the Village Board took up the issue of Mr. Gray's report and recommendation concerning the revocation of the Plaintiff's Certificates Occupancy under Resolution No. 2015-140.

89.     At that meeting, a village trustee moved to table consideration of Mr. Gray's report. That motion was seconded by another trustee. The Board voted 3-2 in favor of tabling the matter and the matter was tabled subject to recall. A true and accurate copy of the October 17, 2015 Village Board of Trustees adoption of the meeting minutes for the September 12, 2015 public meeting is attached as Exhibit 12.

90.     Perhaps in recognition of its unlawful conduct, to date the Village has yet to take any formal or official action adopting, modifying, or rejecting his report and recommendations concerning the Plaintiff's Certificate of Occupancy.

91.     All the more confounding, a recent certificate of occupancy search for the Premises reveals that there is no current Certificate of Occupancy for the Premises. A true and accurate copy of the certificate of occupancy report for the Premises, performed by Advantage Title on or about March 30, 2023, is attached as Exhibit 13.

92.     And, in fact, the Village took advantage of its own illegal acts to pretextually deny the Plaintiff potentially lucrative rental income from the property, all due to the purported absence of a valid C/O. True and accurate copies of the rental rejections for 2016, 2017, and 2018 are attached as Exhibit 14.

93.     Naturally, these rejections made little sense to the Plaintiff given the fact that the Village Board of Trustees had indefinitely tabled the application to revoke the C/O. But when the Village refused to budge off its apparent stance that no C/O existed for the premises (which, unbelievably, continues to be its position today), the Plaintiff commenced an action in the Supreme Court of the State of New York, County of Suffolk under Index No.: 616547/2019 against the Village for judgment declaring that a certificate of occupancy issued by and through the Village's Building Department and its Building Inspector dated July 2, 2010 was valid and of full force and effect.

94.     Before joining issue and answering the Plaintiff's complaint, the Village moved for dismissal for the Plaintiff's failure to comply with a mandatory statutory condition precedent set forth in New York Civil Practice Law & Rules § 9802 calling for service of a notice of claim against a village within 90 days of the accrual of a claim and maintenance of a related action within one-year and ninety days, similar to the provisions set forth in New York General Municipal Law § 50-e.

95.     In a Short-Form Decision & Order dated May 13, 2020 and entered on May 15, 2020, the Supreme Court, Suffolk County (Hon. Martha T. Luft, A.J.S.C.) granted the Village's motion and dismissed, without prejudice with leave to renew/refile, the Plaintiff's complaint for failure to timely serve notice of claim as the Village asserted.  A copy of the court's determination is attached here as Exhibit 15.

96.     Thereafter, on or about October 6, 2020, the Plaintiff commenced an action in the Supreme Court of the State of New York, County of Suffolk, under Index No.: 614599/2020 against the Village, seeking the same or similar relief as previously sought in the prior dismissed action against the Village.

97.     The Village again moved to dismiss the Complaint on procedural grounds contending, among other things, that the action was barred by *res judicata* or collateral estoppel, as the prior matter had concluded in its favor determining the Plaintiff's claims untimely as a matter of law.

98.     In a Short-Form Decision & Order dated May 24, 2021 and entered June 1, 2021, the Supreme Court, Suffolk County (Hon. Joseph A. Santorelli, J.S.C.) disagreed and denied the Village's motion, reasoning that the Village had failed to provide the Plaintiff with a valid pre-deprivation due process public hearing in connection with the putative revocation of his premises' Certificate of Occupancy.  A copy of the court's determination is attached here as Exhibit 16.

99.     Justice Santorelli concluded the matter by specifically stating that the Plaintiff was "entitled to a hearing with respect to the decision as to whether or not to revoke the CO" and that the "Village has failed to make a final determination as to the revocation of the CO at issue in this action." *Id.*

100.    To date, consistent with its due process abuses and its deprivation of Plaintiff's rights, the Village has yet to abide by and adhere to the State Supreme Court's directive to hold a public hearing concerning the putative revocation of the Plaintiff's Certificate of Occupancy.

## NOTICE OF CLAIM

101.    Pursuant to New York General Municipal Law § 50-e, a Notice of Claim was served upon the Defendants on May 17, 2023. A true and accurate copy of the Plaintiff's Notice of Claim, together with the affidavit of service upon the Village, is attached as Exhibit 17.

102.    More than thirty days have elapsed since the notice of claim was presented and the Plaintiff's claim has not been settled or otherwise adjusted by the Defendants.

103.     The Village has not contacted the Plaintiff or his counsel to request an examination pursuant to New York General Municipal Law § 50-h.

104.     Thus, the Plaintiff has complied with any and all conditions precedent for the commencement and maintenance of this suit, including but not limited to service of a notice of claim and making himself available for examination under oath, pursuant to New York General Municipal Law §§ 50-e & 50-I & 50-h.

105.     Accordingly, the state law causes of action asserting malicious prosecution and abuse of process are properly before this Court falling within its pendent and supplemental jurisdiction under 28 U.S.C. § 1367.

### AS AND FOR A FIRST CAUSE OF ACTION
### (CIVIL RIGHTS VIOLATION: DENIAL OF PROCEDURAL DUE PROCESS UNDER COLOR OF LAW VIOLATIVE OF § 1983)

106.     The Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 105 above, with the same force and effect as though fully set forth at length herein.

107.     The Village directly intended to interfere with the Plaintiff's quiet use and enjoyment of his newly constructed home and/or to prevent the Plaintiff from deriving any and all economic use and benefit of the same via its rental during the lucrative Fire Island summer tourist season.  In so doing, the Defendants have deprived the Plaintiff of the quiet use and enjoyment and his constitutional rights to property without just compensation, and have further punished, penalized or otherwise sanctioned and retaliated against the Plaintiff and/or his guests for the exercise of his Constitutional rights, including the Plaintiff's repeated demands for Due Process.

108.     The Defendants' unconstitutional scheme and concerted action or plan has presently succeeded to the extent that the Plaintiff has been unable to derive economic use or

benefit of his premises by renting his property during the lucrative Fire Island summer tourist season.

109.     The Defendants threatened and instituted criminal prosecution of the Plaintiff for use and occupation of the premises, premised in part on the illegal, unconstitutional and unreasonable revocation of the Plaintiff's Certificate of Occupancy, even issuing tickets to the Plaintiff for blatantly false claims of unlawful occupancy.

110.     The purpose and net practical effect of the institution of criminal prosecution and denial of rental permits on purely erroneous and illegal grounds was to effectuate a governmental taking of the Plaintiff's property without consideration or just compensation and without due process of law.

111.     The Plaintiff was deprived of notice and an opportunity to be heard with regard to the Defendants' decision to obviate his rights to his premises, and more generally, the determination to treat the Plaintiff differently from others similarly situated with regard to the host of actions recited above.

112.     By reason of all the foregoing, the Defendants deprived the Plaintiff of his vested and Constitutionally protected property rights and interests without affording him procedural Due Process of law under the Fourteenth Amendment of the United State Constitution.

113.     The Defendants, acting as a matter of official Village policy and under color of law, unilaterally revoked the Plaintiff's Certificate of Occupancy without giving any notice to Plaintiff, without giving Plaintiff any opportunity to be heard, under pretextual circumstances after having already made the determination to revoke the Certificate of Occupancy, without conducting a Due Process hearing, and without making any determination based upon credible and substantial evidence. The Defendants then failed to provide Plaintiff with a pre-deprivation hearing where

doing so would not be unreasonably burdensome and, in fact, was specifically directed by multiple courts of competent jurisdiction.

114.    The Defendants have thus deprived Plaintiff of his constitutionally protectable property interest without due process of law.

115.    The Defendants' unlawful actions, unless rectified by this Court, (I) have adversely affected the Premises' value as it cannot be rented during the lucrative summer rental season on Fire Island; (II) the Plaintiff cannot occupy his premises absent fear of prosecution without the issuance of a valid and permanent Certificate of Occupancy; (III) the Defendants have caused and will continue to cause the Plaintiff to lose income and any prospective economic use and benefit from the premises as a result of the restricted use; (IV) Plaintiff cannot sell the house without a valid C/O; and (V) the Defendants have forced and will continue to force the Plaintiff to expend substantial sums of money for attorney's fees, costs and expenses in attempting to establish his rights and the use of his premises.

116.    By reason of the foregoing, the Plaintiff has suffered and will continue to suffer damages in amounts to be determined at trial and further the Plaintiff is entitled to reimbursement of his reasonable attorney's fees and other litigation expenses herein pursuant to 42 U.S.C. § 1988.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(CIVIL RIGHTS VIOLATION: DENIAL OF EQUAL PROTECTION "CLASS OF ONE"**
**UNDER COLOR OF LAW VIOLATIVE OF § 1983)**

117.    The Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 105 above, with the same force and effect as though fully set forth at length herein.

118.    All of the Defendants, acting individually and in concert, under color of law, including on behalf of the Village, lacked any reasonable evidence or probable cause to accuse the Plaintiff of any crime or to issue a violation of any kind.

119.    Under color of law, the Defendants deprived the Plaintiff of his Fourteenth Amendment rights to equal protection of the law by falsely accusing, and by falsely and unlawfully charging the Plaintiff with criminal proceedings for which there was and is no probable cause, evidence, substantiation or corroboration of any kind.

120.    The accusations of the Defendants of the Plaintiff's commission of various violations of the Village Code were false and were repeatedly made as part of a volitional, willful and concerted action and plan by the Defendants to deprive the Plaintiff of the use and quiet enjoyment and economic use and benefit of the premises and his property without due process of law and in deprivation of the Plaintiff's constitutional freedom and protection from governmental deprivation and taking of his property which took the form of and constituted malicious prosecution and abuse of legal process.

121.    The foregoing actions committed by the Defendants were intentional, reckless, deliberate, malicious, unreasonable, ultra vires and unauthorized as the Defendants had a duty not to subject the Plaintiff to these actions and thus constituted a violation and deprivation of the Plaintiff's constitutional rights.

122.    As a consequence, the Plaintiff has been denied the right to equal protection of the law by the Defendants' selective enforcement of the law against him, as compared to others similarly situated.  The Plaintiff has been subjected to a host of arbitrary and selective rules facially claimed to enforce the Village Defendants' zoning and building codes, rules, regulations and law as a pretense in the issuance of criminal and administrative process without probable cause and

based upon false accusation of the Defendants; in the commencement of criminal prosecution and proceedings without any basis under the law; and in the interpretation of the law with respect to the validity and effectiveness of the Plaintiff's Certificates of Occupancy and the requirements of village seasonal rental permits.

123.   The Defendants' selective enforcement of the law has no rational basis, and has been based upon an impermissible consideration, including an intent to inhibit or prohibit the Plaintiff's exercise of his constitutional rights and malicious bad faith intent to injure the Plaintiff.

124.   The Defendants have selectively enforced and misapplied the law to the Plaintiff's detriment, in violation of the rights guaranteed and safeguarded to the Plaintiff by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

125.   By reason of all of the foregoing, the Plaintiff has suffered and will continue to suffer damages in amounts to be determined at trial and further the Plaintiff is entitled to reimbursement of his reasonable attorney's fees and other litigation expenses herein pursuant to 42 U.S.C. § 1988.

## AS AND FOR A THIRD CAUSE OF ACTION
### (CIVIL RIGHTS VIOLATION: DENIAL OF SUBSTANTIVE DUE PROCESS UNDER COLOR OF LAW VIOLATIVE OF § 1983)

126.   The Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 105 above, with the same force and effect as though fully set forth at length herein.

127.   The Plaintiff had a valid and vested property interest and right and entitlement to the issuance of a permanent certificate of occupancy, as well as the issuance of seasonal rental permits, for his property, and in the fulfillment of these rights and entitlements, the Plaintiff additionally had the right and entitlement to be treated equally under the law.

28

128.    The Defendants unjustly and in an *ultra vires* manner interfered with and by the issuance of a stop work order and the revocation or cancellation of validly issued certificates of occupancy, *de facto* prohibited the Plaintiff's use of his premises for economic or commercial use or benefit and interfered with the Plaintiff's quiet use and enjoyment of the premises.

129.    The Defendants further acted intentionally and/or with reckless disregard for the Plaintiff's constitutional rights when they caused to be commenced the unlawful prosecution of the Plaintiff.

130.    By reason of all of the foregoing, the Defendants are liable to the Plaintiff under 42 U.S.C. § 1983 for the violation of his right to substantive due process of law as guaranteed and afforded to him under the Fourteenth Amendment of the United States Constitution and the Plaintiff has suffered and will continue to suffer damages in amounts to be determined at trial; and, further, the Plaintiff is entitled to reimbursement of his reasonable attorney's fees and other litigation expenses herein pursuant to 42 U.S.C. § 1988.

## AS AND FOR A FOURTH CAUSE OF ACTION
## (VIOLATION OF NEW YORK STATE LAW: MALICIOUS PROSECUTION)

131.    The Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 105 above, with the same force and effect as though fully set forth at length herein.

132.    The Defendants caused the Plaintiff to be prosecuted in the Village of Ocean Beach Justice Court alleging several separate violations of Village Zoning and/or Building Code under docket number: 170771048.

133.    Upon information and belief, on or about March 16, 2012, eight tickets were served on the Plaintiff alleging violations of then existing Village Zoning Code for: (1) Zoning Code § 64-5 limitations on construction: construction and/or change in the nature of occupancy of a

building/structure without first obtaining a separate building permit for a planter/landscaping retaining wall; (2) Zoning Code § 164-25.B: no temporary storage sheds shall be closer to any side line than eight feet for a shower stall, deck extension and staircase; (3) Zoning Code § 64-5.A limitations on construction: construction and/or change in the nature of occupancy of a building/construction, without first obtaining a separate building permit, except for those items which the Building Inspector, with approval of the Board of Trustees, determined require ordinary repair and maintenance permit for a vinyl shed; (4) Zoning Code § 164-25.B: no temporary storage sheds shall be closer to any side line than eight feet for air-condition platform; (5) Zoning Code § 64-5.A limitations on construction: construction and/or change in the nature of occupancy of a building/construction, without first obtaining a separate building permit, except for those items which the Building Inspection, with approval of the Board of Trustees, determined require ordinary repair and maintenance permit for construction of a retaining wall allegedly beyond the scope of a building permit; (6) Zoning Code § 164-25.B: no temporary storage sheds shall be closer to any side line than eight feet for propane cylinders; (7) Zoning Code § 164-25.B: no temporary storage sheds shall be closer to any side line than eight feet for garbage bin; (8) Zoning Code § 64-5.A limitations on construction: construction and/or change in the nature of occupancy of a building/construction, without first obtaining a separate building permit, except for those items which the Building Inspection, with approval of the Board of Trustees, determined require ordinary repair and maintenance permit for a garbage bin allegedly beyond the scope of a building permit.

134.    The Defendants lacked probable cause to prosecute the aforementioned allegations.

135.    The Defendants acted with malice and without justification in continuing to prosecute the matter when it was evident there was no rational basis in law to do so.

136.    On November 1, 2014, the charges against the Plaintiff were dismissed following the grant of the Plaintiff's motion to dismiss.

137.    Despite full knowledge that the C/O had not been properly revoked, which included the Village Prosecutor's express acknowledgment that the Village lacked, "in all good faith," any basis to maintain the criminal prosecutions against the Plaintiff (*see* Ex. 11, 2:9), the Village nevertheless proceeded to commence further criminal proceedings against the Plaintiff in July of 2017, based on Plaintiff purportedly occupying the premises without a valid C/O.

138.    The threat and danger of malicious prosecution continue to this day in that the Village refuses to accept or acknowledge that its attempt to revoke the C/O was improper. *See* Ex. 13.

139.    As a result of the Defendants' malicious prosecution, the Plaintiff suffers mental anguish and anxiety due to the threat of criminal prosecution, the loss of the economic use and benefit and income from prospective rental of his premises during the lucrative Fire Island summer tourist season, the loss of the quiet use and enjoyment of his property, a violation of his civil rights, attorney's fees, legal costs and disbursements, and loss of his reputation within his community, all of which was based upon the unlawful actions of the Village.

140.    By reason of all of the foregoing, the Defendants are liable to the Plaintiff for malicious prosecution and the Plaintiff has suffered and will continue to suffer damages in amounts to be determined at trial.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (VIOLATION OF NEW YORK STATE LAW: ABUSE OF PROCESS)

141.    The Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 105 above, with the same force and effect as though fully set forth at length herein.

142.    On or about November 24, 2012, the Defendants caused to be issued a bench warrant for the Plaintiff's arrest.

143.    The Defendants took said action without probable cause.

144.    The Defendants' actions demonstrate an attempt to abuse the legal system and force the Plaintiff to incur as much expense and cost as possible to ensure that the Plaintiff would not defend himself from the unjust and unlawful prosecution.

145.    As a result of the Defendants' abuse of legal process and the legal system, the Plaintiff suffered and/or incurred mental anguish and anxiety due to the threat of criminal prosecution, the loss of the economic use and benefit and income from prospective rental of his premises during the lucrative Fire Island summer tourist season, the loss of the quiet use and enjoyment of his property, a violation of his civil rights, attorney's fees, legal costs and disbursements, and loss of his reputation within his community, all of which were based upon the actions of the Village.

146.    The Village continues to abuse its process by failing to remedy its illegal and improper unilateral revocation of the C/O despite numerous directives from courts of competent jurisdiction advising the Village that its actions were improper.

147.    By reason of all of the foregoing, the Defendants are liable to the Plaintiff for the abuse of process and the Plaintiff has suffered and will continue to suffer damages in amounts to be determined at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
## (MONELL CLAIMS FOR MUNICIPAL LIABILITY AGAINST THE VILLAGE UNDER 42 U.S.C. § 1983)

148.    The Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 105 above, with the same force and effect as though fully set forth at length herein.

149.    The conduct alleged herein was undertaken by the Defendants pursuant to a policy officially adopted by the Village of seeking to improperly expand the scope of its zoning and/or building code in such a way as to deprive seasonal property owners such as the Plaintiff of the right to full use and economic benefit of rental income during the height of the lucrative Fire Island summer tourist season.

150.    This policy of the Village has been evidenced by the conduct of, among others, the Building Department, the Zoning Board of Appeals, the Mayor, the Board of Trustees, and others who have sought to restrict, interfere with, and infringe upon the Plaintiff's vested property rights and rights to due process of law, equal protection of law, and freedom from the taking of his property without valid consideration and just compensation.

151.    Underscoring the Village's policy are two undeniable facts: (I) the Village Code contains no provision for the revocation of certificates of occupancy; and (II) the Village appointed its Village Attorney as the hearing officer for the sham revocation hearing without authorization from the Village Board of Trustees and in violation of law.

152.    To the extent that such conduct did not result from procedures formally adopted by the Village, the same are so persistent, evident, and widespread in that they continue to this day, so as to constitute a custom, usage, or policy of, amongst others, the Village, and/or the Mayor, and/or the Board of Trustees, and/or the Zoning Board of Appeals, and/or the Building Department of which the policy-making officials of the Village could be charged with actual or constructive knowledge of the same.

153.    To the extent the misconduct which resulted in the violation of Plaintiff's civil rights did not result from procedures formally adopted by, amongst others, the Village and/or custom, policy or usage of the Building Department, and/or Zoning Board of Appeals, and/or the Board of

33

Trustees, the same is the result of the Village's deliberate indifference to its obligations to properly train and/or supervise officials and employees of the Building Department, and/or Zoning Board of Appeals, and/or the Mayor and/or the Board of Trustees.

154.   By reason of all of the foregoing, the Defendants are liable to the Plaintiff and the Plaintiff has been damaged in being unable to use his property in a manner of which he sees fit and is constitutionally entitled to.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## (CIVIL RIGHTS VIOLATION: FIFTH AMENDMENT REGULATORY TAKINGS)

155.   The Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 105 above, with the same force and effect as though fully set forth at length herein.

156.   The reasoning provided by and relied upon by the Defendants for revoking the Plaintiff's Certificates of Occupancy ran contrary to verbal representations and assurances provided by then Village Building Inspector Driscoll and relied upon by the Plaintiff to his detriment.

157.   The Defendants' reasoning as stated above was unreasonable, disproportionate, and intended to pressure the Plaintiff into forfeiting his vested property rights and interest in the constitutional quiet use, enjoyment and/or derivation of economic use and benefit of his property via rental during the lucrative Fire Island summer tourist season.

158.   The Defendants' reasoning as stated above was employed and used in a manner and way by the Defendants so as to impose on the Plaintiff conditions and interference which unconstitutionally and impermissibly burdened the Plaintiff's right and entitlement to and freedom from having his vested property rights and interest taken without just compensation and consideration.

34

159.   By reason of all of the foregoing, the Defendants are liable to the Plaintiff for the unconstitutional regulatory taking of his property without just and valid consideration and compensation and the Plaintiff has suffered and will continue to suffer damages in amounts to be determined at trial.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (DECLARATORY RELIEF)

160.   The Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 105 above, with the same force and effect as though fully set forth at length herein.

161.   Even though the Plaintiff sought to have the Defendants correct their erroneous, unlawful and *ultra vires* revocation of his Certificates of Occupancy and denial of his seasonal rental permits, the Defendants have refused to do so and, more importantly, have openly and brazenly violated a State Supreme Court order directing as much.

162.   The Plaintiff commenced the State Supreme Court action to address and remedy the improper revocation of the Certificate of Occupancy, and was the prevailing party in that litigation inasmuch as the Supreme Court specifically held that the Village's actions were improper and violated Plaintiff's due process rights. Yet despite prevailing in litigation, a justiciable controversy between the Plaintiff and the Defendants persists in that the Plaintiff remains in both legal limbo and jeopardy as he remains unsure of whether he might be subject to criminal prosecution by the Defendants. Further, the Plaintiff remains deprived of the quiet use and enjoyment of his premises as well as the income and economic use and benefit expected from prospective rental of the premises during Fire Island's lucrative summer tourist season.

163.   Accordingly, as by reason of all of the foregoing, the Plaintiff seeks the following declaration of this Court pursuant to 28 U.S.C. § 2201, that the Certificate of Occupancy dated

July 2, 2010 issued by the Village for the Plaintiff's premises in question remains valid, *nunc pro tunc*, from its date of issuance to the present date.

## AS AND FOR A NINTH CAUSE OF ACTION
**(CIVIL CONSPIRACY TO VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS VIOLATIVE OF 42 U.S.C. § 1985)**

164.    The Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 105 above, with the same force and effect as though fully set forth at length herein.

165.    The Village Defendants, employees, officials, inspectors, including but not limited to those elected or appointed to, employed by, or assigned to the Building Department, the Board of Trustees, the Zoning Board of Appeals, and/or the Mayor's office, together and acting in concert, unlawfully conspired to deprive the Plaintiff of the use and quiet enjoyment of and the economic use and benefit of his property in a way that was violative of the Plaintiff's constitutional rights to equal protection of the laws and substantive and procedural due process.

166.    By reason of all of the foregoing, the Defendants are liable to the Plaintiff for their abuse of process, and the Plaintiff has suffered and will continue to suffer damages in amounts to be determined at trial.

## ATTORNEY'S FEES

167.    Pursuant to 42 U.S.C. § 1988, the prevailing party in an action prosecuted under 42 U.S.C. § 1983 is entitled to counsel fees in an amount to be set by the Court.

168.    In the event that the Plaintiff prevails on the First, Second, Third, Fourth, Fifth, Sixth, Seventh and Ninth Causes of Action, he is therefore entitled to attorney's fees in an amount to be determined.

## JURY DEMAND

169.    The Plaintiff demands trial by jury of all issues and claims pursuant to the Seventh Amendment to the U.S. Constitution and Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff demands judgment against the Defendants as follows:

(A)    On Counts I, II, III, V, VI, VIII and IX, damages in an amount to be proved at trial together with reimbursement of his reasonable attorney's fees and other litigation expenses herein pursuant to 42 U.S.C. § 1988;

(B)    On Counts IV and V, damages in an amount to be proved at trial.

(C)    On Count VIII, entry of a declaratory judgment declaring that the Certificate of Occupancy issued by the Village Defendants to the Plaintiff dated July 2, 2010 is valid and of full force and effect, *nunc pro tunc*, from the date of issuance to the present date;

(D)    An award of damages for any and all other monetary and/or non-monetary losses suffered by the Plaintiff in an amount to be determined at trial, plus pre-judgment interest;

(E)    An award of punitive damages, in an amount to be determined at trial, sufficient to deter the Defendants from engaging in future unlawful, unconstitutional, unreasonable, wrongful and *ultra vires* conduct;

(F)    Awarding plaintiff his attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and as otherwise permitted by law.

(G)    Granting such other and further relief as the Court deems just and proper.

Dated: Melville, New York
        August 22, 2023

**KOSAKOFF & CATALDO LLP**

**By:**  */s/ Michael Stanton*
         Michael Stanton
         *Attorneys for Plaintiff*
         175 Pinelawn Road, Suite 100
         Melville, New York 11747
         631-650-1200 (tel)
         631-650-1207 (fax)
         mstanton@kcllp.net

## VERIFICATION

STATE OF NEW YORK                    )
                                     )ss.:
COUNTY OF ~~NEW YORK~~ Suffolk       )

PHILIP G. POTTER, being duly sworn, deposes and says:

That I am the Plaintiff herein and that I have read the foregoing Verified Complaint and know that the contents thereof are true to my knowledge, except as to those matters therein expressly stated to be alleged on information and belief, and as to those matters, I believe those to be true as well.

_____
PHILIP G. POTTER

Sworn to before me this
22 day of August, 2023.

_____
Notary Public

Dale G S Wyckoff
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01WY5022447
Qualified in Suffolk County
Commission Expires June 20, 20 26